The next matter on our calendar is United States v. Jonathan Flom. Thank you. Would you bring the tissues over a little closer? Thanks. Morning, Counsel. Morning, Your Honor. May it please the Court, my name is Lawrence Gerzog and I represent Jonathan Flom. I did not represent Mr. Flom below at trial. Your Honors, this is a conviction after trial on a one-count indictment involving an allegation by the United States of money laundering. And as the Court knows, two of the things that the government has to prove in order to sustain a conviction of money laundering are that the defendant had received a representation that the proceeds of the money he was using or facilitating were the proceeds of a crime and that he believed that they were the proceeds of a crime. Now here, it's our position that there was insufficient evidence introduced to do that. And I think the most telling point in that regard is when Mr. Flom was engaged in this so-called role-playing thing with the undercover. He specifically asked if the securities were fraudulent and did not receive an answer. Why would they have been engaging in the role-playing unless there was an issue with the securities of some significance? Well, it could have well been that they, I mean, if it had been a legitimate, obviously it was a stink. So there was no underlying legitimate transaction with respect at least to the AdvoTech stock. But the role-play could very easily have been what would you do if a customer called to complain about any kind of various different things. None of it, I mean, some of it was a suggestion that what would happen if the customer called and said this is phony. But that could happen if it wasn't phony. That could happen, that is the kind of thing that could happen in any kind of customer service or customer complaint kind of business. Why would you need to practice carefully what words would be used and what response would be given to a complaining customer about a bogus stock certificate? Well, Your Honor, I don't think they practiced carefully what words were to be used. I think the government's side of it was loaded with these words that obviously the government knew was being recorded. They knew that they were going to introduce the recording into evidence at trial. And so they were loading up on words like bull-ass and things like that. But it was never definitively stated that that was the case. Was it irrational for a jury to rely in part on the role-plays in making the determination that Mr. Flom had a fraudulent intent or the necessary intent to convict here? Well, if Your Honor is asking is the very fact of a role-play something that the jury could infer fraud from, I disagree. I'm talking about how the role-plays unfolded and the dialogue that was engaged. I don't think so, Judge. I think that especially when Mr. Flom straight-out asked, well, are they fraudulent? And the person engaging in the government's side of the conversation, A, refused to answer. B said, stay in role, stay in role. And then came back at trial and said, well, you know, criminals don't have a conversation in which they say we're about to engage in criminal activity. Well, they might not if they know they're being tape-recorded, but if they're sitting there talking about what's going on here, there would be some, if Mr. Flom asked that question and it was clear that he knew the answer. Did he not tell the FBI, and wasn't this part of the trial record, that he understood that despite Mr. Larson were selling fraudulent, bogus securities? He understood that they were selling securities under the name of Adfitech, which were bogus. But he was only involved in the stock called Altmark, which everyone concedes was legitimate. But he got a higher fee than he would have gotten if it was a legitimate transaction. Isn't that correct? Well, he got a fee that the government in summation said was higher, and the government kept saying all he did was write a check, all he did was do this, and he got this kind of money. First of all, it isn't that much money, and second of all, a person is free to contract to do something for whatever fee he can collect. But doesn't that raise a point in your mind where you say, why am I being paid this higher fee if everything is above board? Well, under certain circumstances, I know this court has ruled that if you're given $10,000 to deliver a package two miles away, there's something in that package that's not kosher. I understand that. But this isn't that kind of situation. It's not such a large fee. It's not such an unreasonable request. It's something that Mr. Flom did, could do legitimately, was entitled to do. And the fact that the fee was somewhat higher perhaps than other transactions doesn't necessarily give rise to an inference that the transaction itself was not legitimate. I think the other part of this analysis is that Judge Moscoff's allowing the 404B evidence in muddied the situation by allowing evidence of what may have been, and it was never really firmly established that it was, an illicit previous transaction between Mr. Flom and Mr. Spite. The jury, despite the instruction that the judge gave, was able to think that, oh, well, if he and Spite did this once before. You think it was just too prejudicial to allow in? Your Honor knows, as everyone does, not everyone, but lawyers do, that you have to engage in a 403 analysis. So even if the 404B... Did the judge do that? She did it but erroneously. Ah, but she did the analysis. Well, she said, she made a statement that it wasn't more prejudicial than probative. She didn't really engage in a very heavy duty analysis. I beg your pardon? I feel a 403 balancing analysis is the subject of the widest discretion, I think, that a district court judge has. Well, it's certainly, when you are talking about an abuse of discretion standard, obviously, there is discretion built into that. And, yes, a 403B analysis requires discretion, a case-by-case analysis. You're not really making, you're not making an argument about 404B, you're making an argument about 403. Well, I don't know that you can necessarily separate the two. But I'm asking you what you're arguing. Well, I'm saying that part of a 404B analysis is whether, is when you consider the weight and the worthiness of the 404B evidence, it has to outweigh... But in connection with challenging this evidence, you're asking us to focus on the 403. Well, I think the 403 is the most obvious flaw. But as we argued in our brief, the 404B was also flawed in that the, it wasn't entirely clear what the nature of the transaction between Mr. Spike and Mr. Flum was. It was never charged. There were never any, there was never a conviction based on it. And so, and I realize, of course, that 404B doesn't require that. But under the circumstances, I think it's a mixed, mixed 404, 403 analysis. All right. You reserve two minutes for rebuttal. We'll go to the Governor. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Keith Edelman from the U.S. Attorney's Office for the Eastern District of New York, and I was trial counsel below. Beginning with the sufficiency challenge and starting with what is the thrust of the defense's argument as to the, quote, are they exchange. As Judge Carney noted, the jury was entitled to rely on this as evidence of Mr. Flum's fraudulent intent. Even just focusing on that one exchange, and, of course, on sufficiency review, it is the totality of the evidence that must be considered. The are they exchange, after Mr. Flum says, well, are they, there's a quick laugh. The undercover tells Mr. Flum, I'm the customer. In other words, stay and roll. And Mr. Flum then says that, and this is at Government Exhibits 1000 to 1001, that my answer is the same. If there really is an issue, I won't say anything. I'll go, I don't know. So even just that one exchange, Mr. Flum is saying that if he's presented with this complaining customer, then he will say, I don't know this situation. I'll just put them off and I'll circle back to the undercover and to Mr. Spate. But as I mentioned, this is not the only piece of evidence, of course, with respect to the defendant's fraudulent intent. As Judge Lohier mentioned, when Mr. Flum was approached by the FBI, he admitted that he knew Mr. Spate and Mr. Larson, the undercover, were engaged in the illegal sale of fraudulent securities. But that he believed his securities related to Altmark, which everyone agreed was a real company. But what the evidence also at trial showed was that with respect to Altmark, the defendant, number one, that was a lie. The defendant actually engaged in transactions with Special Agent Larson, the undercover, relating to AdvoTech. That's at Government Appendix 280 to 81. There was actually one of the checks that he received from the undercover has in the memo line AdvoTech. That exhibit is 401A. So that statement by Mr. Flum was a lie. It was an admission coupled with a lie. Exactly. And another reason why it's actually also an admission is that with respect to Altmark, Mr. Flum signed a coupon letter, a letter on behalf of Mr. Spate, in which during a recorded call, Mr. Spate said to put in that letter that Altmark was issuing coupons, which is not true. In other words, directing Mr. Flum to sign a letter that contained a false statement with respect to that security that Mr. Flum admitted he was engaged in. He knew it was not true when he signed it, is what you're saying. Exactly. On that recorded call, Mr. Spate says, can you please put this? This is not that Altmark has been issuing coupon payments, which is not true, kind of has a laugh. Mr. Flum then signs that letter. There's actually a follow-up conversation the next day where Mr. Spate directs Mr. Flum to issue a revised letter, which is actually true, showing that the first letter contained a false statement that Mr. Flum wrote. But again, that's just one piece of evidence. If we look to some of the other conversations between the undercover and Mr. Flum, there's repeated references, again, even just taking away from the role plays, which I believe the jury was entitled to rely on. For instance, in one recorded call, Special Agent Larson told Flum, well, he's going to, quote, warm up the laser printer to issue new securities. And as was explained, a broker cannot print his own securities. The issuer of a stock issues the securities. That's at Government Exhibit 259 to 260. Could you comment for a minute on the district court's ruling about Agent Karszewski? I don't know how to pronounce his name. Yes. Testimony about certain of these inculpatory statements made by Mr. Flum, but denied Mr. Flum's counsel's request to inquire about other statements made that had a more exculpatory flavor. Sure. I wondered about the rule of completeness here. Yes, Your Honor, and we've argued this actually should be on a plain error review, because the way that issue came up was defense counsel below was reading from the interview report, the 302, which was not in evidence. Reading it to the jury? Yes. This begins at Government Appendix 581. And what he's doing is he's reading from a document that's not in evidence. That happens at trial fairly often, and there was an objection. And we come to sidebar, and Judge Moskoff says, you're reading from something that's not in evidence. And there is a hint there that defense counsel wants to get to another statement, and we argue, the government argued that that was hearsay, that statement being offered. But part of the statement was allowed in, wasn't it? I'm sorry, Your Honor? Part of the statement was allowed in. Yes, Your Honor. The statement that was allowed in was what Judge Loyer referred to, that Mr. Flum knew that Mr. Spate and Mr. Larson were engaged in the sale of bogus securities, but that he believed his statements related only to Altmark. The statement the defense wanted to get in was a statement made at a different portion of that same interview in which he said that he had no reason to believe that the defendant had no reason to believe that his transactions related to fraudulent securities. Even though it was ruled hearsay, wasn't it a prior consistent statement that should have been allowed in? I don't think it was a prior consistent statement, Your Honor. Wasn't that the argument that he made that he defended himself against on the trial, that he never believed that they were fraudulent? That is certainly true, Your Honor, but it wasn't a prior consistent statement of the defense. It still would qualify of the defendant. It would still qualify resubmit as a pure hearsay statement when offered by the defendant. But a prior consistent statement is an exception to the hearsay rule, isn't it? Yes, Your Honor. So why wasn't it allowed in as a prior consistent statement? First note, Your Honor, that argument was never presented to Judge Moskowitz. Well, I'm presenting it to you now. I appreciate that. Just for the standard of review, I don't believe it's a prior consistent statement because, again, the import of that statement was already before the jury when Mr. Did he ever make that specific statement before? I'm sorry, Your Honor? Did he ever make the specific statement before trial? No, that was never brought up in the trial record that he had made that statement before. So this statement could not be consistent with something else that a statement of Mr. Fahn was being offered for. He was never in a position to claim his innocence until the FBI approached him. That's correct. That was the one and only interview that was brought up at trial. But again, Your Honors, the import of this statement was already before the jury because the defense at trial was that he believed, the defendant believed his statements only related to Altmark, and that was legitimate, so he had no fraudulent intent. The defense counsel made use of that in summation. That was already before the jury. So even if this was a prior consistent statement that should have been admitted, it would have been essentially the substance of the same statement that was already admitted, that we argued, as I just mentioned, was actually false and inculpatory. No, correct me where I'm wrong here, because that's the whole thrust of a prior consistent statement, that it bolsters the later claim by the defense that he believed that it was not fraudulent. That was the whole point of getting that earlier statement in. That's what I don't understand when you say . . . well, whatever. Go on. Well, I don't . . . again, to think about prior consistent statements, a witness says one . . . It was a prior consistent statement to the FBI agent, and it was what he was arguing at trial, right? So they were consistent, and it was the prior consistent statement with his defense at trial. Am I correct in that? I think that is factually correct, but legally it does not matter. One of the requirements for a prior consistent statement is that it also be made in response to an allegation or an assertion that there was a recent motive for fabrication or a motive to lie. That is nowhere present with respect to challenging Mr. Flom's statement. This ordinarily comes up on cross-examination where there's an allegation that the witness has a bias or something to lie, and then often on redirect, or it's usually the government that will come forward and say, no, no, no, he . . . We can rebut that assertion. This is all in the course of 1302. Exactly. One interview, 1302. Their statement is made at different times during the interview, but there's no prior consistent circumstance that is going to bolster his statement. There's certainly . . . there's no testimony as to his motivation to lie or to fabricate, which is also a requirement under the rule. Turning briefly just to the conscious avoidance issue, unless Your Honors have other questions on that, is the defense's reply in this . . . before this court illustrates the need why conscious avoidance was appropriate, if in any case, than this one. My friend on the other side says that Special Agent Larson didn't use the word scheme. He didn't use the word bogus outside of the role play scenarios. This is exactly the circumstance where a special agent in a sting operation will need to go up to the line. We submit . . . we don't mean to take away from the fact that we submit Mr. Flom had actual knowledge, but the case law is clear that the government can argue both actual knowledge and conscious avoidance. And the last prong is to the factual predicate of the conscious avoidance charge. There is ample evidence that Mr. Flom consciously avoided knowing. He said he did not . . . do not . . . capital letters . . . do not want to know what Mr. Agent Larson was doing. I see my time has expired. Thank you, Your Honors. Mr. Gerza, you've retained three minutes for rebuttal. We'll hear it now. First, I don't want to presume to say I agree with you because I'm not sure what you are thinking, but I do believe that the rule of completeness should have required the judge to include that prior consistent statement. I believe that there wasn't any reason to preclude it. The judge ruled that it was hearsay. It wasn't. And that in and of itself, because it was error, should have allowed . . . or the judge should have allowed that statement into evidence. With respect to the conscious avoidance that my colleague raised, this is a tricky area. This is an area where the person being charged has to have a reason to believe the person giving him the evidence or giving him the facts about whether this is criminal activity or not. And so when you get into the conscious avoidance, it kind of puts the cart before the horse. How can you consciously avoid that which it's someone else's responsibility to tell you? It's not quite the way it works, but okay. I think that the agent here had to convince . . . had to see to it that Mr. Flom actually believed that what he was doing was laundering the proceeds of criminal activity. And for the government to argue that, well, there really wasn't enough evidence for the jury to find . . . or a jury, even if you can't find that Mr. Flom was told, then you should convict him on the basis that he should have realized. And if you should have realized into the statute, which isn't there, you basically cut the legs out from under the part of the statute which requires that the person doing that acting actually had the belief and had the knowledge. And so I believe that the use of the conscious avoidance charge in this case . . . and combined with everything else, combined with the 404 and 403 evidence . . . was such that the jury could have come away with a misunderstanding of what was required of them to convict. Thank you. Thank you. Thank you both. We'll reserve decision.